In the Matter of Arnold SLUTZKY, Debtor.

In the Matter of Stewart FRANK, Debtor.

In the Matter of Edward M. RADER, Debtor.

Sol LUFT and Matthew Borovoy, Plaintiffs,

v.

Arnold SLUTZKY, Stewart Frank, and Edward M. Rader, Defendants.

Bankruptcy Nos. 80–00695–W, 80–00693–W and 80–00692–W. Adv. Nos. 80–0683 to 80–0685.

United States Bankruptcy Court, E. D. Michigan S. D.

July 30, 1982.

Marty A. Burnstein, Southfield, Mich., for Luft and Borovoy.

Irving A. August, Birmingham, Mich., for Slutzky, et al.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This matter came on for trial upon a complaint to determine the dischargeability of a debt in the amount of $157,000.00 allegedly owed to the plaintiffs by the defendants. The plaintiffs, Luft and Borovoy, contend their debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(4). The defendants, Slutzky, Frank and Rader, contend the plaintiffs have failed to carry their burden of proof. At the close of the trial, the matter was taken under advisement and the parties were requested and submitted proposed findings of fact and conclusions of law. Upon an in-depth examination of the record herein, this Court adopts and incorporates by reference the proposed findings of fact and conclusions of law submitted by the defendants. The complexity of this case, however, compels this Court to elaborate further upon its conclusions.

In a case such as this the burden of proof is on the plaintiffs to show that the debt should be excepted from discharge. *In Re Kriger*, 2 B.R. 19 (Bkrtcy.1979); *In Re Gennaro*, 12 B.R. 4 (Bkrtcy.1981). In a § 523(a)(2)(A) action, the creditor has a heavy burden in objecting to the discharge on the ground that the money or credit was obtained by false pretenses, a false representation or actual fraud. *In Re Singh*, 16 B.R. 449 (Bkrtcy.1982). A creditor seeking to except a debt from discharge must prove by clear and convincing evidence the facts essential to the objection. *In Re Colasante*, 12 B.R. 635 (D.C.1981); *In Re Heil*, 14 B.R. 581 (Bkrtcy.1981). Further, exceptions to discharge are to be narrowly construed. *In Re LoBosco*, 14 B.R. 739 (Bkrtcy.1981). This construction of the exceptions to discharge was used under the Bankruptcy Act and is presently used under the Bankruptcy Code. *In Re Iannelli*, 12 B.R. 561 (Bkrtcy. 1981); *In Re Aldrich*, 16 B.R. 825 (Bkrtcy. 1982).

Section 523(a)(2)(A) reads, in part, as follows:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."

The plaintiffs allege the defendants' actions fall within this section since the defendants made certain representations in connection with this business venture which proved to be false and misleading. The plaintiffs also contend that certain omissions of the defendants misled the plaintiffs in that said omissions concealed material facts.

There is no doubt that not all frauds are included within the exception of 523(a)(2)(A), but only those which are involved in the obtaining of money, property, or services by false pretenses or false representations. The frauds involved in the portion of 523(a)(2)(A) are those which in fact involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made. 3 *Collier on Bankruptcy*, 15th ed. 523.08(4). As noted by plaintiffs' counsel, the pertinent elements of 523(a)(2)(A) are

as follows: that the defendants made a materially false representation; that such representation was made knowingly and with the intent to defraud; and that the plaintiffs reasonably relied on the false representation. *In Re Gillespie*, 11 B.R. 167 (Bkrtcy.1981). Fraud may also consist of concealment or intentional non-disclosure as well as affirmative misrepresentation of material facts. *In Re Harris*, 458 F.Supp. 238 (D.Ore.1976), aff'd 587 F.2d 451 (C.A.7, 1978), cert. den. 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285.

Section 523(a)(4) reads:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

    \*    \*    \*    \*    \*    \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."

The question of whether a debt is dischargeable in bankruptcy is one of federal law. *In Re Tapp*, 16 B.R. 315 (Bkrtcy.1981); *In Re Liberati*, 11 B.R. 54 (Bkrtcy.1981). Necessarily then, the question of what constitutes a fiduciary capacity within the meaning of the Bankruptcy Code is also one of federal law. In this Court's opinion, based on the facts before it, the defendants are not fiduciaries within the meaning of § 523(a)(4). See 3 *Collier on Bankruptcy*, 15th ed. ¶ 523.14(1); *In the Matter of Oscar Margulies*, 1 B.C.D. 388 (1973).

■ Turning to the facts of this case, and keeping in mind the aforementioned standards, this Court concludes that the plaintiffs have failed to carry their burden of proof. Although there are indicia of violations of § 523(a)(2)(A) present herein, such are of insufficient weight and they fail to tip the balance of the scale that would compel this Court to find intentional wrongdoing or moral turpitude on the part of the defendants. Additionally, the facts, in this Court's analysis of the evidence, do not establish a material misrepresentation having been made, either orally or in writing, which would allow the plaintiffs to claim reasonable reliance thereon. The facts, quite simply, reveal a scenario of poor business judgment, a rather naive and myopic conviction of one and all of a "lead-pipe cinch", gross mismanagement and overall ineptness on the part of both plaintiffs and defendants. The scenario, as it unfolded, did not elevate itself to actionable fraud, misrepresentation or intentional concealment of material facts by the defendants.

The plaintiffs are individuals of high intellect, extensive professional educational training and experience—and not entirely devoid of prior investment and business exposure and involvement. Each testified that this investment was the biggest of their lives—yet neither called upon the available, and pre-paid, services of their counsel whom they had on retainer to review the documents given to them. The plaintiffs did not read—they did not bother to read—the material which was given to them by the defendants. The plaintiffs signed blank signature pages without seeing or inquiring of the substance of the documents they were signing. Reference to defendants' proposed findings of fact discloses other examples in which plaintiffs failed to exercise the slightest due care in their undertakings.

It can be stated confidently that had the plaintiffs carefully read that which had been given to them most of the alleged misrepresentations and omissions would not have existed at all. The defendants, quite reasonably, had every reason to believe the plaintiffs, hardly unsophisticated, would read the materials given to them.

Additionally, the testimony of the plaintiffs reveals that they were aware of much more than they claimed. For example, the plaintiffs were clearly aware of the tax write-offs. This is evidenced by the fact that they took the precise deductions to which they were entitled for their losses in the relevant years. Not only were these write-offs simply for their regular losses but for double losses as to which the plaintiffs claim they had no knowledge.

The plaintiffs claimed that they would not have invested in the venture had all of

the facts been spelled-out to them. This Court is of a different opinion. At the time of the initiation and investment in the venture, the plaintiffs did not care about the facts which they now claim misled them. They knew Remeny was to make a hefty profit from the sale of the land; they knew the defendants were investing a disproportionate share in the partnership; they knew a venture of this nature occasioned fees, commissions, costs and expenses—indeed, they knew; and at least one of the plaintiffs made abundantly clear he cared not of those attendant factors.

Much has been made of the fact that Turken, a CPA and financial advisor of the plaintiffs, received an undisclosed, at the time, $4,000.00 finder's fee, ostensibly for "delivery" of the plaintiffs as investors. The ethics of this manipulation, of course, leaves much to be desired; but it does not transcend itself into actionable fraud, misrepresentation or concealment against these defendants. Aside from the fact plaintiffs have had their successful day in court against Mr. Turken, an evaluation and weighing of the testimony of plaintiffs leads this Court to an inescapable conclusion: knowledge of the finder's fee paid to Turken at the time might then have ruptured the CPA-client relationship, but there is no reason to believe that oblique event would have dampened plaintiffs' enthusiasm to participate and share in this prospective bonanza. Repeating, there were numerous other facts of which the plaintiffs would have been aware had they read and studied the materials given to them. This is especially true in light of the fact that on cross examination the plaintiffs testified that the materials were true and accurate and that they saw no problems with the majority of the statements contained therein.

The plaintiffs cannot ask this Court to except this debt from discharge on the basis of § 523(a)(2)(A) when the evidence reveals a total lack of due care and reasonable diligence by the plaintiffs with regard to facts within their knowledge but which they ignored. The material facts were easily capable of being discovered—but were not—because of the lack of any due care by the plaintiffs who all but ignored the material given to them.

In summary, the plaintiffs have failed to prove the elements of § 523(a)(2)(A). There was no actionable deceit involved herein; certainly there can be no claim of reasonable reliance, especially when the plaintiffs did not even read the material which they claim to have relied upon. There was also no evidence, as suggested by plaintiffs' counsel, that this was a scheme calculated to defraud the plaintiffs.

One final note: the defendants' conduct in this matter, while not fraudulent within the meaning of § 523(a)(2)(A), was reprehensible and not in keeping with good business practice. Not only did the defendants exhibit a lack of interest in engaging in sound business practices in arranging the financing and progression of this venture, but their bungling incompetence and poor business judgment during the course of the exercise indicates to this Court that perhaps the defendants should remain in their respective and earlier fields of expertise. If not for the total lack of care on the plaintiffs' part, this debt may very well have been excepted from discharge; for it was a close issue fairly and ably presented by each counsel. The defendants floundered and flirted their way along the thin red line which separates the areas of actual, intentional fraud and honest mistake. Only the actions of the plaintiffs prevented this Court from rendering a finding of a § 523(a)(2)(A) violation.

Judgment is for the defendants. The debt will not be excepted from discharge.

So ordered.